IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Donald C. HABERMAN, Attorney at Law.†

Supreme Court

*No. 84–1572–D. Submitted on briefs October 29, 1985.—*
*Decided November 26, 1985.*
(Also reported in 376 N.W.2d 852.)

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

For the appellant, Donald C. Haberman, there was a brief by *Roland J. Steinle, Jr.,* Cedarburg.

For the respondent the matter was submitted on the brief of *Randal N. Arnold,* deputy administrator, Board of Attorneys Professional Responsibility.

Attorney Haberman appealed from the report and recommendation of the referee that his license to practice law in Wisconsin be suspended for two years for unprofessional conduct consisting of neglect of seven estates in which he acted as attorney or personal representative, acting in the presence of a conflict of interest in one of them, and failure to cooperate with the Board of Attorneys Professional Responsibility (Board) investigations into two of them. The referee also recommended that Attorney Haberman be required to turn over all files in the seven estates to the circuit court for assignment to other counsel, to pay reasonable attorney fees necessarily incurred in closing those estates, to reimburse the estates for tax penalties and interest resulting from his neglect, and to file a complete accounting in each of those estates in which he acted as personal representative.

Also, the referee recommended that Attorney Haberman be ordered to pay $200 as a sanction for his failure

to submit to discovery in the course of the disciplinary proceeding. That recommendation is based on the referee's having found Attorney Haberman in contempt of court by reason of his refusal to honor a subpoena requiring him to produce certain documents and appear personally for a deposition in the course of the Board's investigation of and preparation for this disciplinary proceeding. Finally, the referee recommended that Attorney Haberman be required to pay the costs of this proceeding.

We determine that a two-year suspension of Attorney Haberman's license is appropriate discipline for his unprofessional conduct, and we accept the referee's other recommendations.

Attorney Haberman was admitted to practice law in Wisconsin in 1952, and practices in Milwaukee. He has not previously been the subject of an attorney disciplinary proceeding. The referee in this matter is Attorney Rudolph P. Regez.

After filing an answer denying most of the allegations of unprofessional conduct, Attorney Haberman filed a motion to dismiss the disciplinary proceeding for lack of jurisdiction. He argued that this court, the Board and the referee had no jurisdiction to determine whether he had engaged in unprofessional conduct in connection with the estates as long as those estates remained pending in the circuit court. He contended the jurisdiction of the circuit court in the probate proceedings is exclusive and that it includes the issue of his professional conduct in those proceedings. The referee denied that motion.

When the Board subsequently made a demand for the production of documents concerning those estates, Attorney Haberman refused to produce them, and he also refused to submit to a deposition. Shortly thereafter, Attorney Haberman filed a petition with this court ask-

ing that the disciplinary proceeding be stayed pending completion of the probate matters. The court denied the petition.

Subsequently, when Attorney Haberman failed to appear or produce the requested documents, the Board filed a motion with the referee to compel Attorney Haberman to submit to a deposition and comply with the request for the production of documents. The referee entered an order to that effect and provided that sanctions would be imposed should Attorney Haberman fail to comply. Attorney Haberman disregarded that order and refused to submit discovery.

The referee then scheduled a hearing to determine whether a sanction should be imposed for Attorney Haberman's failure to complete discovery and to determine whether Attorney Haberman was in contempt of court for failing to respond to a subpoena properly served upon him. Following that hearing, the referee found Attorney Haberman to be in contempt of court but gave him an opportunity to purge himself by responding to the subpoena and submitting to discovery on specified dates. Attorney Haberman did not do so, and the referee issued an order finding him in contempt, recommending to this court that he be ordered to pay $200 as a sanction, striking his answer to the Board's complaint, and scheduling the evidentiary hearing in the disciplinary matter to be conducted as a default.

The referee advised Attorney Haberman that, although the hearing would proceed as a default and neither he nor his attorney would be permitted to participate, he would have the opportunity to testify at the conclusion of the Board's case provided that, prior to the hearing, he produce the documents, files and records previously demanded. Attorney Haberman chose not to testify at the hearing, but he made an offer of proof at the conclusion of the Board's case. On the basis of the evidence

presented by the Board, the referee concluded that Attorney Haberman had engaged in unprofessional conduct by neglecting each of the following matters, in violation of SCR 20.32(3).

(1) In a guardianship matter, the circuit court issued orders to show cause why Attorney Haberman should not be removed as guardian of an incompetent for his failure to file an account for each of two years. Following the ward's death, the court entered an order allowing the guardianship accounts and directing the balance of the ward's property, approximately $70,000, to be paid to Attorney Haberman as personal representative in the estate. When that order was entered, there was no indication that any notice of the guardianship accounts had been given to the decedent's only heir.

Attorney Haberman had been appointed personal representative in the estate in February, 1980, but no inventory was filed in that estate until September, 1982. The court issued an order in October, 1981, requiring Attorney Haberman to show cause why a final judgment had not been entered, and hearings were held on that order to show cause eight times between November, 1981, and September, 1982. The court ultimately ordered Attorney Haberman to file an inventory, schedule a final hearing and file an order of discharge by specific dates. Attorney Haberman did not comply with that order, and, as of the date of the hearing in this disciplinary proceeding, March 1, 1985, there was no order approving the final account, no final judgment, no supplemental account, no inheritance tax certificates or income tax clearances filed in the estate.

Also, Attorney Haberman failed to timely pay 1979, 1981 and 1983 real estate taxes on the estate's property, notwithstanding that at all times there were sufficient funds in the estate to make timely payment of those taxes. As of the date of the disciplinary hearing, the

1983 taxes remained unpaid. Further, Attorney Haberman incorrectly computed the inheritance tax, resulting in an additional tax of approximately $1,300, plus interest of approximately $1,200, all of which had not been paid at the time of the disciplinary hearing, despite the Department of Revenue's having sent a delinquent tax warrant to the clerk of the circuit court in October, 1984, and having sent Attorney Haberman notice of the unpaid inheritance taxes. In addition, Attorney Haberman failed to timely file fiduciary income tax returns for three calendar years.

The decedent's heir made repeated requests to Attorney Haberman for information, as did an attorney he had retained, but Attorney Haberman failed to properly respond to them. Of the total estate, Attorney Haberman had distributed only $20,000, which he distributed in December, 1982. The heir testified that he retained another attorney to represent him, to whom he paid $500 to assist him in closing the estate.

When the heir filed a grievance with the Board, the Board sent a copy to Attorney Haberman and requested a response. Attorney Haberman responded that the estate was scheduled for a final hearing in March, 1982, whereupon the Board closed its file. The following June, however, the heir's attorney wrote to the Board that Attorney Haberman had refused to give him an accounting of the guardianship, and the Board asked Attorney Haberman to furnish information and an accounting of the estate and guardianship within 20 days. Attorney Haberman failed to respond to that request and to a subsequent request from the Board.

The Board then served Attorney Haberman with a notice to appear before the Board's deputy administrator to answer questions under oath concerning the estate and guardianship and to produce his files. Attorney Haberman appeared but refused to answer any questions

and refused to produce the requested documents on the ground that the Board had no jurisdiction to investigate the grievance. The referee concluded that Attorney Haberman failed to cooperate with the Board in its investigation, in violation of SCR 21.03(4) and 22.07(2) and (3).

(2) In another estate, in which he represented the personal representative, Attorney Haberman failed to pay a claim against the estate to which he had agreed, and he failed to respond to requests by the claimants' attorney for payment. Ultimately, the court issued an order to show cause why the personal representative should not be directed to pay the claim.

A settlement had been reached on another claim in that estate, but Attorney Haberman failed to respond to letters from the claimant's attorney seeking the return of a signed stipulation on the claim. Attorney Haberman twice promised to return the stipulation within a week, but he failed to do so. The claimant's attorney then sought a court order requiring Attorney Haberman to enter into the stipulation, which he did but not until seven months after the settlement had been reached.

In August, 1982, one of the heirs petitioned the court for an order requiring the personal representative to show cause why she should not be removed because of delay. Hearings on that motion were adjourned six times, and in May, 1984, several heirs filed a petition alleging that the personal representative had failed to file an inventory, prepare an accounting, arrange for the sale of certain assets, pay property taxes and maintain property, file inheritance and income tax returns, and satisfy conditions of an escrow agreement, which had resulted from the sale of one of the estate's properties and concerning which approximately $54,000 had been deposited into escrow because of title policy ex-

ceptions. As of the date of the hearing in this matter, none of those exceptions had been corrected, and the escrow continued.

The court held a hearing on the heirs' petition and entered an order adjourning the matter on a day-to-day basis, conditioned upon the personal representative's closing the estate within 60 days. The estate was not closed within that time, and the court ordered the personal representative to resign and make an accounting, providing that she would be surcharged $50 per day until she complied with that order. No accounting was filed, and the court ultimately entered an order terminating the duties of the personal representative and directing her to transfer all estate assets to a successor. The court's surcharge order was subsequently amended to extend the surcharge to a time when the personal representative would transmit all accounts and assets to the successor and to explicitly entitle the personal representative to indemnification from Attorney Haberman to the extent of any surcharge paid.

As of February, 1985, no inventory, accounting or tax releases had been filed in the estate. In addition, taxes on the estate's real property for 1979 through 1983, remained unpaid as of the date of the disciplinary hearing, no inheritance tax return had been filed, despite two communications from the Department of Revenue to Attorney Haberman to do so, and fiduciary income tax returns were not timely filed. The personal representative made more than 50 requests asking Attorney Haberman to proceed timely and take appropriate action to settle the estate, and he assured her he would do so.

The Board notified Attorney Haberman of a grievance made concerning this estate, and it requested a response within 20 days. On the twentieth day Attorney Haberman asked for and received an extension of two weeks

to respond. When he had not responded within the extended period, the Board advised him of his continued failure. Attorney Haberman did not file any written response to the grievance, nor has he requested any additional extension of time to respond. The referee concluded that Attorney Haberman thereby failed to cooperate with the Board, in violation of SCR 21.03(4) and 22.07(2) and (3).

(3) In another estate, in which Attorney Haberman was appointed special administrator, a claimant made numerous demands for payment between August, 1977 and March, 1981. The court wrote to Attorney Haberman that no notice to creditors had been given and that notice would have to be published before payment of that claim could be made. Attorney Haberman told the court that he would attend to the matter immediately. Almost five months later, the claimant wrote to the judge informing him that no action had been taken on the claim. As of August, 1984, Attorney Haberman had not complied with the judge's direction to publish notice, although he did pay the claim.

Attorney Haberman did not file an inventory or fiduciary income or inheritance tax returns in the estate. The Wisconsin Department of Revenue issued a delinquent tax notice in October, 1978, and that notice is the last document filed in the estate, even though the estate has been open for almost seven years. Further, an instrument purporting to be the decedent's will was filed in September, 1977, but no petition for its admission has been filed.

(4) Attorney Haberman was appointed personal representative in another estate in February, 1976. That estate consisted of approximately $35,000, mostly in cash. In September, 1980, the court issued an order requiring Attorney Haberman to show cause why final judgment had not been entered, and in March, 1981, he was granted an additional 30 days to close the estate.

A second order to show cause issued in July, 1981, and in September, 1981, the court ordered Attorney Haberman to file a final account and an order of discharge on specified dates. The account was timely filed, but as of the date of the disciplinary hearing no order of discharge had been filed. The estate has been open almost ten years, and no action has been taken since July, 1983.

(5) Attorney Haberman represented the successor personal representative in another estate after the removal of the initial personal representative upon his conviction of the theft of approximately $38,000 in estate assets. When the successor died in 1974, Attorney Haberman was appointed to succeed him. The following March, Attorney Haberman filed a receipt for all assets due him from his predecessor, but the receipt did not recite the amount of assets, nor did it describe them.

From the date of his appointment until October, 1980, Attorney Haberman failed to file an inventory, account or other report concerning the estate's assets. In February, 1979, at the request of a charitable beneficiary, the court issued an order requiring Attorney Haberman to show cause why he should not be removed for neglect or otherwise be compelled to act. As a result of that order, Attorney Haberman made a partial distribution to that beneficiary.

A second order to show cause was issued in March, 1982, and the matter was adjourned upon Attorney Haberman's promise to file an inventory, final account and status report of the claim the estate had against the initial personal representative. Attorney Haberman failed to keep that promise, and the court issued an order in September, 1982, requiring him to file an inventory and final account by specified dates. The account was not timely filed, and the estate was not closed until

February, 1984, nine years after Attorney Haberman had been appointed personal representative. In addition, Attorney Haberman failed to timely pay Wisconsin inheritance tax or make a tender of estimated tax.

(6) Attorney Haberman and another were appointed co-personal representatives of an estate in July, 1977. An inventory was filed in September, 1978, showing an estate of approximately $262,000, and a final account was filed the following month and supplemented in September, 1981.

In December, 1980, the court issued an order requiring Attorney Haberman to show cause why a final judgment had not been entered in the estate. In September, 1981, the co-personal representative wrote Attorney Haberman demanding a complete accounting, and in February, 1983, the court issued a second order requiring the co-personal representatives to show why the estate had not been closed. Nevertheless, the estate remained open as of the date of the disciplinary hearing.

(7) Attorney Haberman represented a man for whom he drafted a will dated January 4, 1979, and a codicil dated February 20, 1979. The client died at the age of 91 in February, 1980, and his widow, whom he had married the preceding October, petitioned for intestate administration and for the appointment of Attorney Haberman as personal representative, claiming the decedent's will and codicil had been revoked by his subsequent marriage to her. The estate amounted to approximately $1.25 million. It was subsequently determined that the decedent died intestate, and domiciliary letters were issued to Attorney Haberman in February, 1980.

Two heirs of the decedent then petitioned for the admission of the will and codicil, and extensive litigation ensued. The matter was settled by the payment of approximately $467,000 to certain heirs other than the widow. After that payment and the payment of legal

expenses of approximately $262,000, the remainder of the estate continued as an intestate proceeding, with the widow being the sole heir.

In August, 1982, the court issued an order requiring Attorney Haberman to show cause why final judgment had not been entered in the estate. Also, in April, 1983, an attorney for the heirs, other than the widow, demanded that Attorney Haberman furnish copies of appraisals, inventories and a final account. Following a hearing in February, 1984, Attorney Haberman stated that the matter could be closed within 60 days, and the court granted him an extension until October 11, 1984, to close the estate. A further extension for six months was subsequently granted. Nevertheless, as of the date of the hearing in this matter, no accounting, tax releases or final judgment had been filed in the estate.

Further, no inheritance tax return had been filed, although a tender of $44,000 was made in February, 1981. In June, 1983, the Department of Revenue (Department) asked Attorney Haberman to file an inheritance tax return and directed him to file the decedent's 1978 and 1979 individual income tax returns. He was also told that no fiduciary returns had been filed for the estate. In April, 1984, the Department issued doomage tax assessment for 1978 and 1979 in the amount of $6,700, plus $5,600 interest. As of the date of the hearing in this matter, no inheritance tax return had been filed.

In addition to Attorney Haberman's neglect of this estate, the referee also concluded that he had acted in the presence of a conflict of interest. With respect to the drafting of the client's 1979 will and codicil, Attorney James Ghiardi, who represented a nephew of the testator, had conferred with the testator and Attorney Haberman and reviewed with them the will and codicil, including the bequests to be made to the testator's fami-

ly. The will was also reviewed by the testator, the nephew, Attorney Ghiardi and Mrs. Edna Hansen, the woman the client intended to marry, who also was Attorney Haberman's mother-in-law. The will gave the wife-to-be one-seventh of the estate, with the remainder going to the testator's relatives. Because the client was concerned that Mrs. Hansen be satisfied, a codicil was subsequently agreed upon by which she would receive a one-seventh share of the estate or $125,000, whichever was greater. Although Attorney Haberman had told Attorney Ghiardi that the client had planned to marry, there was no discussion concerning the effect of the proposed marriage on the will.

The client and Mrs. Hansen were married on October 25, 1979. When Attorney Haberman told Attorney Ghiardi of the marriage, the latter raised the question of the effect of the marriage on the will, as there had been no prenuptial agreement. Attorney Haberman told Attorney Ghiardi that he would talk with the testator. There was a discussion in November, 1979, concerning a postnuptial agreement, taxes and other matters relating to the marriage, but Attorney Haberman told Attorney Ghiardi that nothing had been done concerning the will.

After the testator's death, Attorney Haberman told Attorney Ghiardi that he filed for intestate administration on behalf of the widow because the will had been revoked by the marriage. Attorney Ghiardi testified that Attorney Haberman told him, "We are going for the whole thing." Attorney Ghiardi then advised his client, the decedent's nephew, and withdrew as counsel, expecting to be a witness in the ensuing contest.

The circuit court transcript of that contest disclosed that the decedent, prior to the marriage, was concerned about the disposition of his estate and asked Attorney Haberman whether Mrs. Hansen would get one-third

of his estate if they got married. When Attorney Haberman replied that she might, the testator told Attorney Haberman that perhaps they should delay the marriage, to which Attorney Haberman replied that the decision was up to the client.

The referee found that Attorney Haberman never discussed with his client, either before or after the marriage, the effect of the marriage on the will. The referee also found that Attorney Haberman had a duty to fully advise his client in that regard, as well as to inform him of his own personal interest in the matter by virtue of being Mrs. Hansen's son-in-law and the conflict of interest resulting therefrom.

With respect to the conflict of interest, Mrs. Hansen testified that she had always considered Attorney Haberman to have been her attorney, that it was her husband's intention that she and other members of his family share in his estate and that he had no idea that his marriage would have an impact on his will. The referee found that Attorney Haberman, in addition to being attorney for the testator, was also attorney for his mother-in-law, whose will he had previously drafted. The referee also found that Attorney Haberman had never explained this dual representation to his client and never counseled his client concerning alternate courses of action in estate planning.

The referee concluded that, subsequent to his client's death, Attorney Haberman had a continuing duty to that client not to take a position contrary to his interest or contrary to the interests of the beneficiaries under his client's will. By petitioning for intestate administration on the basis that the will had been revoked by the subsequent marriage, the referee concluded that Attorney Haberman violated his duty to his deceased client, as well as his duty to the beneficiaries under the will. Accordingly, the referee concluded that Attorney Haber-

man's conduct in the matter constituted a representation of conflicting interest, in violation of SCR 20.24(1) and 20.28(2).

In this appeal, Attorney Haberman argued that the Board acted without jurisdiction, thereby "usurping" the authority of the circuit court in the estate matters. He contended that, until the circuit court made findings of fact, conclusions of law and orders within the individual probate proceedings, the Board should not have proceeded in this disciplinary matter alleging his neglect in handling those estates. He took the position that the Board should have referred the grievances to the probate judge for consideration and disposition in each estate.

This argument is without merit. This court has the inherent power to discipline attorneys. Moreover, a circuit court has no authority to discipline attorneys appearing before it except by the use of its general contempt power; a circuit court is not empowered to enforce the Code of Professional Responsibility.

Attorney Haberman next contended that this court's rule proscribing an attorney's neglect of a legal matter, SCR 20.32(3), is unconstitutionally vague and uncertain, such that no reasonable and prudent lawyer can know with certainty what conduct is proscribed. He contended that the term "negligence" has been used in prior disciplinary proceedings to describe several different kinds of attorney misconduct and, consequently, has not been sufficiently "isolated" to provide adequate guidance.

In opposition to that argument, the Board cited *In Matter of Complaint Against Seraphim*, 97 Wis. 2d 485, 294 N.W.2d 485 (1980), for the proposition that a greater degree of flexibility and breadth is permitted with respect to standards of professional conduct than is

allowed in criminal statutes. *Id.*, at 497. Although *Seraphim* was a judicial disciplinary proceeding, our holding in that case is equally applicable to standards of professional conduct for attorneys. The Board also cited numerous statutory deadlines in the Wisconsin Probate Code in opposition to Attorney Haberman's contention that attorneys were without sufficient guidance to determine what might constitute "neglect" under SCR 20.32(3).

With respect to his failure to respond to Board inquiries and produce documents that had been subpoenaed, Attorney Haberman argued that this court has previously held that an attorney is entitled to refuse to produce records relating to a disciplinary proceeding, citing *State v. McIntyre*, 41 Wis. 2d 481, 164 N.W.2d 235 (1969). In *McIntyre* the court cited a United States Supreme Court holding that an attorney could not be disbarred for refusing to honor a subpoena to compel him to produce financial records and for refusing to testify in the disciplinary proceeding for the reason that the attorney's compliance would have violated his constitutional right against self-incrimination.

In response to this argument, the Board distinguished the cases cited by Attorney Haberman as concerning attorneys who had properly invoked the fifth amendment right against self-incrimination, noting that Attorney Haberman never claimed that right in this proceeding. The Board also cited *State v. Postorino*, 53 Wis. 2d 412, 193 N.W.2d 1 (1972), in which the court qualified its statement in *McIntyre, supra,* stating that the invocation of the fifth amendment by an attorney in a disciplinary proceeding is not *in itself* a ground for disbarment.

Further, in 1977 the court adopted rules governing the enforcement of attorneys' professional responsibility,

including rules establishing as misconduct an attorney's failure to answer questions, furnish documents or present relevant information to the Board. SCR 22.07(2) and (3). The Board cited numerous disciplinary cases in which the court has imposed discipline for an attorney's refusal to cooperate with the Board in a disciplinary investigation, making specific reference to those rules. We therefore conclude that Attorney Haberman's argument that he had a constitutional right not to testify or produce his records is without merit.

Attorney Haberman also argued that it was improper for the referee to strike his answer and conduct the disciplinary proceeding as a default in response to his failure to testify and produce documents. In support of that position he cited two federal cases in which it had been held that a default or a dismissal is an impermissible response to a party's exercise of the right against self-incrimination. We again note that Attorney Haberman never claimed that right as the reason for his refusal to respond to the Board.

Finally, Attorney Haberman contended that he should have been given the right to present evidence in the disciplinary proceeding in mitigation of any sanction that might ultimately be imposed. He acknowledged that the referee gave him the opportunity to make an offer of proof, and he made that offer at the close of the Board's case at the disciplinary hearing. In this regard, the referee stated in his report:

"At the conclusion of the testimony, even though respondent had been fully informed that the hearing was being conducted as a default matter, he was given the opportunity to testify. He declined but made an offer of proof.

"I hereby make the express determination that if the proof offered had been proven, the evidence produced by the Board is so clear and convincing that my findings would not be altered in any respect."

The Board took the position that the referee properly exercised discretion by striking Attorney Haberman's answer and treating the proceeding as a default, citing sec. 804.12(2), Stats.[1] Noting that he never claimed the right against self-incrimination, the Board pointed out that Attorney Haberman's only justification for refusing to permit discovery, that is, his assertion that this court has no jurisdiction in a disciplinary proceeding based on alleged misconduct in the course of probate proceedings until those proceedings have terminated, was raised and rejected on a motion to dismiss before the referee and on the petition to this court.

Attorney Haberman has not challenged the sufficiency of the evidence supporting any of the referee's findings of fact and conclusions of law, and we accept those

---

[1] Sec. 804.12(2), Stats., provides, in pertinent part:

"FAILURE TO COMPLY WITH ORDER. (a) If a party or an officer, director, or managing agent of a party or a person designated under s. 804.05(2)(e) or 804.06(1) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under sub. (1) or s. 804.10, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

"1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;

"3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"4. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination."

findings and conclusions. We agree that a two-year suspension of Attorney Haberman's license to practice law in Wisconsin is appropriate discipline for his misconduct considered in this proceeding.

Further, it is appropriate that Attorney Haberman be required to turn over the seven probate files considered in this proceeding to the circuit court for assignment to other counsel and that he be required to pay the reasonable attorney fees necessarily incurred at closing those estates, as well as to reimburse the estates for tax penalties and interest incurred as a result of his neglect. Also, Attorney Haberman should be required to promptly file complete accounts in those estates in which he is personal representative or special administrator. Finally, with respect to the contempt matter, we approve the referee's order for the imposition of a $200 fine.

IT IS ORDERED that the license of Attorney Donald C. Haberman to practice law in Wisconsin is suspended for two years, commencing January 1, 1986.

IT IS FURTHER ORDERED that Attorney Donald C. Haberman turn over all files concerning the guardianship and the estates considered in this proceeding to the circuit court for Milwaukee county, Probate Division, for assignment to other counsel and that he pay the reasonable attorney fees necessarily incurred in closing those estates, as determined by the circuit court, and reimburse the estates for tax penalties and interest incurred as a result of his neglect, again as determined by the circuit court.

IT IS FURTHER ORDERED that, in those estates in which he acted as personal representative, Attorney

Donald C. Haberman file a complete accounting with the circuit court within 30 days of the date of this order.

IT IS FURTHER ORDERED that Attorney Donald C. Haberman is fined $200 for contempt, such fine to be paid to the clerk of this court within 30 days of the date of this order.

IT IS FURTHER ORDERED that within 120 days of the date of this order Attorney Donald C. Haberman pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing by Attorney Haberman of his inability to pay the costs within the time specified, the license of Attorney Donald C. Haberman to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Attorney Donald C. Haberman comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been suspended.